UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| INTERSTATE EQUITIES, INC., | ) | |
| | ) | Bankruptcy No. 09-17219 (BIF) |
| | ) | |
| Debtor. | ) | Ref. Docket No. 9 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**INTERIM ORDER PURSUANT TO 11 U.S.C. § 363 TO PERMIT USE OF CASH
COLLATERAL AND PROVIDE ADEQUATE PROTECTION TO PARTIES WITH
INTEREST IN CASH COLLATERAL**

This matter came before the Court on the Motion Of The Debtor And Debtor-In-

Possession For Order Pursuant To 11 U.S.C. § 363 To Permit Use Of Cash Collateral And

Provide Adequate Protection To Parties With Interest In Cash Collateral [Docket No. 9] (the

"Motion") of Interstate Equities, Inc., debtor and debtor-in-possession (the "Debtor") for entry of

an interim order pursuant to section 363 of title 11 of the United States Code, 11 U.S.C. §§ 101,

*et seq*. (as amended, the "Bankruptcy Code"), (i) authorizing the Debtor to use cash collateral,

(ii) granting adequate protection, and (iii) scheduling a further and final hearing; and the Court

having determined that proper and adequate notice of the Motion was provided to the parties set

forth in the Motion; and the Court further determining that the relief sought in the Motion is in

the best interests of the Debtor's estate, all creditors and parties in interest; and the Court having

determined that the legal and factual bases set forth in the Motion and at any hearing establish

just cause for the relief granted herein;

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 24, 2009 (the "Petition Date").  The Debtor continues to operate its businesses pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.      As of the Petition Date, the Debtor is indebted to Wilmington Trust Company ("WTC") in the approximate amount of $6,013,905.50 plus costs on account of certain financing arrangements (collectively, the "WTC Loans") between the Debtor and WTC.

C.      On or about March 27, 2002, WTC made a loan available to the Debtor in the principal amount of $350,000.00 (the "WTC 1001 Loan"), which loan is evidenced by:

1.      A certain Business Loan Agreement dated March 27, 2002 (the "WTC 1001 Loan Agreement");

2.      A certain Promissory Note dated March 27, 2002 in the principal amount of $350,000.00, as amended by that certain Change in Terms Agreement dated August 6, 2007 (collectively, the "WTC 1001 Note"); and

3.      A certain Commercial Security Agreement dated March 27, 2002 (the "WTC 1001 Security Agreement").  The WTC 1001 Loan Agreement, the WTC 1001 Note and the WTC 1001 Security Agreement, together with all agreements, instruments and documents executed in connection therewith, are referred to as the "WTC 1001 Loan Documents."

D.      On or about July 7, 2003, WTC made a loan available to the Debtor in the original principal amount of $250,000.00 (the "WTC 1101 Loan"), which loan is evidenced by:

1.      A certain Business Loan Agreement dated July 7, 2003 (the "WTC 1101 Loan Agreement");

2.      A certain Promissory Note dated July 7, 2003 in the principal amount of $250,000.00, as amended by that certain Change in Terms Agreement dated September 29, 2003

(increasing the principal amount of the WTC 1101 Loan to $350,000.00) and that certain Change

in Terms Agreement dated August 6, 2007 (collectively, the "WTC 1101 Note"); and

        3.     A certain Commercial Security Agreement dated July 7, 2003 (the "WTC

1101 Security Agreement"). The WTC 1101 Loan Agreement, the WTC 1101 Note and the

WTC 1101 Security Agreement, together with all agreements, instruments and documents

executed in connection therewith, are referred to as the "WTC 1101 Loan Documents."

    E.     On or about January 21, 2002, WTC made a loan available to the Debtor in the

original principal amount of $1,751,600.00 (the "WTC 9002 Loan"), which loan is evidenced by:

        1.     A certain Business Loan Agreement dated January 21, 2002 (the "WTC

9002 Loan Agreement");

        2.     A certain Promissory Note dated January 21, 2002 in the principal amount

of $1,751,600.00, as amended by that certain Change in Terms Agreement dated January 31,

2003, that certain Change in Terms Agreement dated January 9, 2004 (increasing the principal

amount of the WTC 9002 Loan to $3,275,000.00), that certain Change in Terms Agreement

dated February 13, 2004, that certain Change in Terms Agreement dated November 9, 2005 and

that certain Change in Terms Agreement dated August 6, 2007 (collectively, the "WTC 9002

Note"); and

        3.     The WTC 9002 Loan Agreement and the WTC 9002 Note, together with

all agreements, instruments and documents executed in connection therewith, are referred to as

the "WTC 9002 Loan Documents."

    F.     On or about January 21, 2002, WTC made a loan available to the Debtor in the

original principal amount of $500,000.00 (the "WTC 9003 Loan"), which loan is evidenced by:

1.      A certain Business Loan Agreement dated January 21, 2002 (the "WTC 9003 Loan Agreement");

2.      A certain Promissory Note dated January 21, 2002 in the principal amount of $500,000.00, as amended by that certain Change in Terms Agreement dated January 9, 2004 (increasing the principal amount of the 9003 Loan to $684,223.00), that Change in Terms Agreement dated February 13, 2004, that certain Change in Terms Agreement dated November 9, 2005, and that certain Change in Terms Agreement dated August 6, 2007 (collectively, the "WTC 9003 Note"); and

3.      A certain Commercial Security Agreement dated January 21, 2002, as amended by that certain Commercial Security Agreement dated January 9, 2004 (as amended, the "WTC 9003 Security Agreement").  The WTC 9003 Loan Agreement, the WTC 9003 Note and the WTC 9003 Security Agreement, together with all agreements, instruments and documents executed in connection therewith, are referred to as the "WTC 9003 Loan Documents."

G.      On or about January 21, 2002, WTC made a loan available to the Debtor in the principal amount of $1,500,000.00 (the "WTC 9004 Loan"), which loan is evidenced by:

1.      A certain Business Loan Agreement dated January 21, 2002 (the "WTC 9004 Loan Agreement");

2.      A certain Promissory Note dated January 21, 2002, by the Debtor in favor of WTC, in the principal amount of $1,500,000.00, as amended by that certain Change in Terms Agreement dated January 31, 2003, that certain Change in Terms Agreement dated November 9, 2005, that certain Change in Terms Agreement dated January 24, 2007 and that certain Change in Terms Agreement dated August 6, 2007 (collectively, the "WTC 9004 Note"); and

4

3.    A Commercial Security Agreement dated January 21, 2002 (the "WTC 9004 Security Agreement").  The WTC 9004 Loan Agreement, the WTC 9004 Note and the WTC 9004 Security Agreement , together with all agreements, instruments and documents executed in connection therewith, are referred to as the "WTC 9004 Loan Documents."

H.    On or about October 25, 2004, WTC made a loan available to the Debtor in the principal amount of $350,000.00 (the "WTC 9005 Loan"), which loan is evidenced by:

1.    A certain Business Loan Agreement dated October 25, 2004 (the "WTC 9005 Loan Agreement");

2.    A certain Promissory Note dated October 25, 2004, by the Debtor in favor of WTC, in the principal amount of $350,000.00, as amended by that certain Change in Terms Agreement dated November 9, 2005, that certain Change in Terms Agreement dated January 24, 2007 and that certain Change in Terms Agreement dated August 6, 2007 (collectively, the "WTC 9005 Note"); and

3.    A Commercial Security Agreement dated October 25, 2004 (the "WTC 9005 Security Agreement").  The WTC 9005 Loan Agreement, the WTC 9005 Note and the WTC 9005 Security Agreement , together with all agreements, instruments and documents executed in connection therewith, are referred to as the "WTC 9005 Loan Documents."

I.    On or about February 10, 2005, WTC made a loan available to the Debtor in the principal amount of $50,000.00 (the "WTC 9006 Loan"), which loan is evidenced by:

1.    A certain Business Loan Agreement dated February 10, 2005 (the "WTC 9006 Loan Agreement");

2.    A certain Promissory Note dated February 10, 2005, by the Debtor in favor of WTC, in the principal amount of $50,000.00, as amended by that certain Change in

5

Terms Agreement dated November 9, 2005, that certain Change in Terms Agreement dated

January 24, 2007 and that certain Change in Terms Agreement dated August 6, 2007

(collectively, the "WTC 9006 Note"); and

       3.     The WTC 9006 Loan Agreement and the WTC 9006 Note, together with

all agreements, instruments and documents executed in connection therewith, are referred to as

the "WTC 9006 Loan Documents."

       J.     The WTC 1001 Loan Documents, the WTC 1101 Loan Documents, WTC 9002

Loan Documents, WTC 9002 Loan Documents, WTC 9004 Loan Documents, WTC 9005 Loan

Documents and the WTC 9006 Loan Documents are referred to, collectively, as the "Original

WTC Loan Documents."

       K.     As a result of certain defaults and Events of Default having occurred under the

Original WTC Loan Documents, WTC, the Debtor and certain guarantors and affiliates of the

Debtor entered into a certain Forbearance and Amendment to Loan Documents Agreement dated

as of December 31, 2007, as amended by that certain First Amendment to Forbearance and

Amendment to Loan Documents Agreement dated as of May 6, 2008, that certain Second

Amendment to Forbearance and Amendment to Loan Documents Agreement dated as of July 31,

2008, that certain Third Amendment to Forbearance and Amendment to Loan Documents

Agreement dated as of August 31, 2008 and that certain Fourth Amendment to Forbearance and

Amendment to Loan Documents Agreement dated as of October 31, 2008 (collectively, the

"WTC Forbearance Agreement").  Pursuant to the Forbearance Agreement, the Debtor, among

other things, granted to WTC a security interest in all of the Debtor's Accounts, Chattel Paper,

Intellectual Property, Deposit Accounts, Documents, General Intangibles, Goods, Instruments,

6

Investments, Letter-of-Credit rights, Motor Vehicles, Supporting Obligations, monies, books and records, Commercial Tort Claims and proceeds of all of the foregoing.

L.      Pursuant to the WTC Forbearance Agreement, all collateral securing any of the WTC Loans, Original WTC Loan Documents, the WTC Forbearance Agreement and/or any agreement, document or instrument executed in connection with the WTC Forbearance Agreement also secures all of the other WTC Loans, Original WTC Loan Documents, the WTC Forbearance Agreement and/or any agreement, document or instrument executed in connection with the WTC Forbearance Agreement.

M.      The Original WTC Loan Documents, the WTC Forbearance Agreement and all agreements, documents and instruments executed in connection with the WTC Forbearance Agreement are referred to herein, collectively, as the "WTC Loan Documents."

N.      Pursuant to certain of the WTC Loan Documents, the Debtor pledged and granted security interests (the "WTC Liens") in favor of WTC on all of the Debtor's Accounts, Chattel Paper, Intellectual Property, Deposit Accounts, Documents, General Intangibles, Goods, Instruments, Investments, Letter-of-Credit rights, Motor Vehicles, Supporting Obligations, monies, books and records, Commercial Tort Claims and proceeds of all of the foregoing (collectively, the "Collateral") as security for the obligations owed by the Debtor to WTC, all as more specifically set forth in the applicable WTC Loan Documents.

O.      As of the Petition Date, the Debtor is indebted to PNC Bank, National Association ("PNC") in the approximate amount of $195,408.94 plus costs on account of a certain promissory note dated July 2, 2009 by the Debtor in favor of PNC in the principal amount of $200,000.00 (the "PNC Note").  In connection with the PNC Note, the Debtor executed that certain Commercial Security Agreement (the "PNC Security Agreement") dated July 2, 2009 in

PHI 316,471,913v7 10-8-09

favor of PNC, pursuant to which the Debtor granted to PNC security interests (the "PNC Liens") in certain of the Collateral.  The PNC Note and the PNC Security Agreement, together with all agreements, documents and instruments executed in connection therewith, are referred to herein as the "PNC Loan Documents".

P.    The Debtor has acknowledged and agreed that the description of the WTC Loan Documents, the Debtor's indebtedness to WTC, the PNC Loan Documents and the Debtor's indebtedness to PNC set forth in this Interim Order is a true and correct description.  For purposes of this Interim Order, the Debtor, WTC and PNC have agreed that the description of the WTC Loan Documents, the Debtor's indebtedness to WTC, the PNC Loan Documents and the Debtor's indebtedness to PNC set forth herein shall be binding only as to the Debtor, all guarantors of the Debtor's indebtedness to WTC and/or PNC, WTC and PNC.

Q.    An immediate need exists for the Debtor to use Cash Collateral in order to continue the operation of its businesses.  The Debtor requires the use of "Cash Collateral" for the purpose of funding its continuing operations, and has requested WTC and PNC to consent to the Debtor's use of Cash Collateral pursuant to the terms and subject to the conditions set forth herein.  Without such use of Cash Collateral, the Debtor will not be able to pay its direct operating expenses, obtain goods and services needed to carry on its businesses in a manner that will avoid irreparable harm to the Debtor's estate.

R.    The Debtor's limited use of Cash Collateral may result in a reduction in the value of the Collateral without a corresponding reduction in the obligations owed to WTC and/or PNC by the Debtor pursuant to the WTC Loan Documents and/or the PNC Loan Documents, as applicable.

PHI 316,471,913v7 10-8-09

S.      Notice of the preliminary hearing (the "Preliminary Hearing") and the relief requested in the Motion has been given to (i) the Office of the United States Trustee; and (ii) the creditors holding the 20 largest unsecured claims against the Debtors.  No official committee of unsecured creditors (the "Committee") has yet been appointed in this chapter 11 case.

T.      Based upon the record at the Preliminary Hearing, WTC and PNC have acted in good faith in connection with this interim order (the "Interim Order") and their reliance on this Interim Order is in good faith.

U.      Based on the record before this Court, it appears that the terms of this Interim Order, including, without limitation, the terms of the use of Cash Collateral, are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

V.      The Debtor has delivered to WTC and PNC the detailed budget, a copy of which is attached hereto as **Exhibit "A"** (the "Budget") that sets forth the Debtor's anticipated collections and cash expenses of operations ("Approved Expenses"), the Debtor's projected cash receipts ("Projected Revenues"), and the Debtor's projected cash receipts and cash disbursements (by line item) on a weekly basis for the time period reflected therein.  The Budget may be modified or supplemented from time to time by written agreement of WTC and PNC and the Debtor without the need of further notice, hearing or order of this Court.  The consent of WTC or PNC to any Budget shall not be construed as a commitment by either WTC or PNC to provide post-petition financing ("DIP Financing") hereafter or to permit the use of Cash Collateral after the occurrence of a default or Event of Default (as defined below) under this Interim Order.

PHI 316,471,913v7 10-8-09

W.      The Debtor has requested immediate entry of this Interim Order.  The permission

granted herein to use Cash Collateral is necessary to avoid immediate and irreparable harm to the

Debtor.  This Court concludes that entry of this Interim Order is in the best interests of the

Debtor's estate and creditors as its implementation will, among other things, sustain the Debtor's

business operations during the interim period and enhance the Debtor's prospects for a

successful completion of this chapter 11 case.

Based upon the foregoing findings and conclusions, and upon the record made

before this Court at the Preliminary Hearing, and good and sufficient cause appearing therefore,

IT IS HEREBY ORDERED, DETERMINED AND DECREED that

1.      The Motion is granted on an interim basis, and upon the record made before this

Court at the Preliminary Hearing, and any objections to the Motion are overruled.

2.      Subject to the terms and conditions set forth herein (and contingent upon Debtor's

compliance herewith), the Debtor is authorized to use Cash Collateral to pay only the Approved

Expenses set forth in the Budget from the date hereof until the "Termination Date" which shall

be the earlier of (a) November 7, 2009; or (b) upon an Event of Default (as hereinafter defined).

Notwithstanding the above, WTC and PNC consent to the Debtor's request to allow a ten percent

(10%) fluctuation in the Budget provided the ultimate bottom line number does not vary as stated

in the Budget.

3.      In addition to Approved Expenses as set forth in the Budget, the Debtor is

authorized to use Cash Collateral to pay (a) all fees payable by the Debtor to the Office of the

United States Trustee pursuant to 28 U.S.C. § 1930 incurred during the term of this Interim

Order (the "U.S. Trustee's Fees"), and (b) all fees payable by the Debtor to the Clerk of

Bankruptcy Court incurred during the term of this Interim Order (the "Clerk's Fees").

4.      The Debtor's right to continue to use Cash Collateral shall be contingent upon the Debtor's compliance with each and every provision of this Interim Order, including compliance with the Budget attached hereto as **Exhibit "A"**.

5.      In consideration of and as adequate protection for any diminution in the value of the Collateral from and after the Petition Date:

a.      WTC and PNC are each hereby granted security interests and liens (to the extent of and of the same priority as their respective pre-petition security interests and liens in and on the Collateral) on all of the Debtor's now existing and hereafter acquired assets, all accessions, additions, products and all cash and non-cash proceeds of all of the foregoing, to the extent each of WTC and/or PNC, as applicable, maintained liens on such assets prior to the Petition Date (collectively, the "Replacement Liens"), which liens shall be deemed to be effective from the Petition Date; provided, however, that such liens and security interests shall be limited to the extent that the Debtor uses Cash Collateral and to the extent that the value of the pre-petition Collateral diminishes as a result thereof.  The Replacement Liens shall not be 'primed' by any other lien or encumbrance, whether by order of the Court or by the passage of time.  The Replacement Liens shall be supplemental of, and in addition to, the pre-petition liens and security interests of WTC and/or PNC, as applicable;

b.      WTC and PNC are each hereby granted a superpriority administrative claim in the amount of such diminution in value with priority above all other claims entitled to priority under Bankruptcy Code section 507; provided, however, that such superpriority administrative claims shall be subordinate to the U.S. Trustee's Fees and the Clerk's Fees;

c.      WTC and PNC are each hereby granted duly-perfected liens and security interests (to the extent of and of the same priority as their respective pre-petition security

11

interests and liens in and on the Collateral) upon all property of the Debtor's estate to the extent

of any post-petition diminution in the value of the Cash Collateral resulting from the Debtor's

use of the Cash Collateral;

        d.      To the extent of any diminution in the value of the Cash Collateral, WTC

and PNC are each hereby granted replacement liens (to the extent of and of the same priority as

their respective pre-petition security interests and liens in and on the Collateral) upon all assets

similar in kind and character to WTC's and/or PNC's pre-petition Collateral of the Debtor

pursuant to Bankruptcy Code section 361; and

        e.      The Debtor shall not use any Cash Collateral during the interim period

except as authorized by this Interim Order or as consented to by WTC and PNC.

       6.      By virtue of and pursuant to this Interim Order, all liens granted or authorized

pursuant to this Interim Order to or for the benefit of WTC and/or PNC shall be, and they hereby

are, valid, enforceable and perfected, effective as of the Petition Date, and (notwithstanding any

provisions of any agreement, instrument, document, the Uniform Commercial Code or any other

relevant law or regulation of any jurisdiction) no further notice, filing or other act shall be

required to effect such perfection, and all liens that may be created upon any designated accounts

and any other deposit accounts or securities accounts shall be, and they hereby are, deemed to

confer "control" for purposes of sections 8-106, 9-104, 9-105, 9-106, 9-107 and 9-314 of the

Delaware Uniform Commercial Code as in effect as of the date hereof in favor of WTC and/or

PNC; provided, however, that if WTC and/or PNC shall, each in its sole discretion, choose to

require the execution of and/or file (as applicable) such financing statements, notices of liens and

other similar instruments and documents, all such financing statements, notices of liens and other

similar instruments and documents shall be deemed to have been executed, filed and/or recorded

*nunc pro tunc* as of the Petition Date.  Each and every federal, state and local government agency

or department is hereby directed to accept the entry by this Court of this Interim Order as

evidence of the validity, enforceability and perfection on the Petition Date of the liens granted or

authorized pursuant to this Interim Order to or for the benefit of WTC and/or PNC.

7.      Except as expressly provided herein, nothing contained in this Interim Order nor

the performance of any term hereunder shall be deemed an admission of any party hereto, or

shall in any way limit or affect any rights or remedies of the Debtor, WTC, PNC or Burger King

Corporation ("BKC").

8.      The Debtor shall open and maintain its debtor-in-possession bank accounts with

WTC.  The Debtor represents, covenants and warrants that it will not open any new or further

accounts at any bank or institution other than WTC, except as authorized by WTC in writing.

9.      During the term of this Interim Order, the Debtor shall pay all insurance

premiums necessary to maintain adequate insurance coverage on all of Debtor's assets and shall

pay all withholding taxes and all other taxes assessed against the Debtor as and when due; and

10.     The Debtor shall deliver to each of WTC, PNC and BKC the following reports

and information on the dates indicated below unless otherwise directed by WTC, PNC and/or

BKC:

a.      Actual weekly cash flow statements delivered to each of WTC,

PNC and BKC by the following Thursday for the previous week's reporting period;

b.      A rolling thirteen week *pro forma* cash flow statement delivered to

each of WTC, PNC and BKC biweekly by the Thursday of the week in which such statement is

due;

13

        c.      A detailed aging accounts receivable report, detailed aging accounts payable report and an inventory summary to be delivered to each of WTC, PNC and BKC by the following Thursday for the previous week's reporting period;

        d.      The Debtor's monthly operating reports as and when filed with the Bankruptcy Court; and

        e.      During the term of this Interim Order, any other documents or information reasonably requested by WTC, PNC and/or BKC.

        11.      During the term of this Interim Order, upon reasonable notice and during the Debtor's normal business hours, WTC, PNC and/or BKC and/or their agents, including but not limited to attorneys, accountants, consultants, appraisers and/or environmental experts, shall have the right to inspect any of the Debtor's books, records, and business plans.  The Debtor will permit WTC, PNC and/or BKC and/or their agents (including consultants) upon reasonable notice and Debtor's full access to the Debtor's facilities to carry out such inspection.  WTC, PNC and/or BKC and/or their agents shall also have full access upon reasonable notice and during the Debtor's normal business hours, to Debtor's personnel and the Debtor's professionals and/or consultants, who shall cooperate with WTC, PNC and/or BKC and/or their agents in the performance of inspections and audits, the determination of the Debtor's cash needs, the verification of financial information of the Debtor and the evaluation of the Debtor's performance in bankruptcy together with the Debtor's prospects for formulating a viable and acceptable plan of reorganization or plan of liquidation provided, however, that nothing herein shall be construed as impairing the Debtors' attorney-client and work product privileges or the fiduciary responsibilities of the debtor-in-possession.  To the extent professionals and/or consultants of the Debtor have not been retained by the Debtor in this bankruptcy case, the

PHI 316,471,913v7 10-8-09

Debtor shall use its best efforts to provide WTC, PNC and/or BKC with access to such professionals and/or consultants upon their retention.

12.    The Debtor shall, from time to time, execute and deliver to WTC and/or PNC any statement, assignment, instrument, agreement or other document and take any other action that WTC may reasonably request to implement the provisions of this Interim Order or any protection or benefit in favor of WTC and/or PNC provided or acknowledged by this Interim Order.

13.    To the greatest extent permitted under the Bankruptcy Code and all other applicable laws and rules, all costs and expenses reasonably incurred by WTC and/or PNC in connection with the preservation and protection of its rights under this Interim Order and the collection of the indebtedness owed by the Debtor to WTC and/or PNC including, without limitation, all filing fees and reasonable counsel fees incurred in connection with the foregoing, and all insurance premiums and other payments reasonably incurred by WTC and/or PNC to adequately insure the Collateral, and all such other expenses, fees and costs incurred by WTC and/or PNC in connection with this bankruptcy case, the loans made to or for the benefit of the Debtor, and the enforcement of WTC's and/or PNC's rights in the collection of the loans or the preservation of WTC's and/or PNC's collateral shall constitute a part of the indebtedness owing to WTC and/or PNC, as applicable, and payment of the same by WTC and/or PNC shall constitute an advance made on behalf of the estate hereunder and incorporated into the amount of all of the Debtor's obligations to WTC and/or PNC arising under this Interim Order and/or the WTC Loan Documents and/or the PNC Loan Documents including, without limitation, the Cash Collateral used by the Debtor and any post-petition costs and expenses incurred by WTC and/or PNC in connection with this Interim Order and during the course of this bankruptcy case (the "Obligations") owed by the Debtor to WTC and/or PNC.

PHI 316,471,913v7 10-8-09

14.    All Collateral shall secure all Obligations to the extent limited herein.

15.    The findings of fact, admissions and stipulations with respect to the WTC Loan Documents and the WTC Liens contained in this Interim Order shall be immediately binding upon the Debtor in all circumstances.

16.    For purposes of this Interim Order the description of the WTC Loan Documents, the Debtor's indebtedness to WTC, the PNC Loan Documents and the Debtor's indebtedness to PNC set forth herein shall be binding only as to the Debtor, all guarantors of the Debtor's indebtedness to WTC and/or PNC, WTC and PNC.

17.    During the period from the date hereof through the Termination Date, the Debtor agrees that it will not grant a lien or security interest in any of the Collateral to any other party without the prior written consent of WTC and PNC and subject to Bankruptcy Court approval.

18.    The occurrence of any of the following during the term of this Interim Order shall constitute an event of default hereunder ("Event of Default"):

a.    the Debtor shall fail to keep, observe or perform any of the terms of this Interim Order or undertakings hereunder including, but not limited to, all payment requirements and reporting provisions contained herein;

b.    the Debtor shall knowingly furnish or knowingly make any false, inaccurate or materially incomplete representation, warranty, certificate, report or summary in connection with or under this Interim Order;

c.    the Debtor and/or any of its affiliates shall permanently cease(s) substantially all of its operations or take any action for the purpose of such cessation;

d.    the Debtor shall contest the extent, validity and/or priority of any lien or security interest of WTC and/or PNC, file any claim, complaint, adversary proceeding, suit,

16

demand, action or cause of action against WTC and/or PNC, or shall seek to have the

Bankruptcy Court annul, modify or amend any part of this Interim Order without the prior

written consent of WTC and PNC;

        e.      a trustee is appointed in the Debtor's bankruptcy case;

        f.      the Debtor's chapter 11 case is converted to a case under chapter 7 of the

Bankruptcy Code or is dismissed or the Debtor files a motion requesting a dismissal or a

conversion of its chapter 11 case to a liquidation under chapter 7 of the Bankruptcy Code unless

any of the foregoing are consented to by WTC and PNC;

        g.      the Debtor shall contract or agree to sell or sells any of its assets, outside

of the ordinary course of business, which are subject to the WTC Liens, the PNC Liens and/or

the Replacement Liens without prior consent of WTC and/or PNC, as applicable, and/or without

prior consent of the Court;

        h.      the Collateral is impaired by the imposition of any material lien, claim or

encumbrance arising after the Petition Date, which is asserted to be equal or senior, in whole or

in part, to the WTC Liens, the PNC Liens and/or the Replacement Liens in favor of WTC and/or

PNC, except to the extent consented to by WTC and/or PNC, as applicable; or

        i.      the Debtor attempts, under sections 363, 364 or any other section of the

Bankruptcy Code to subordinate the WTC Liens, the PNC Liens and/or the Replacement Liens

or to provide any other person any lien or adequate protection in the Collateral without the prior

consent of WTC and/or PNC, as applicable.

      19.      Upon the Termination Date, the Debtor's right to use Cash Collateral shall

terminate and the Debtor shall not seek use of Cash Collateral in which WTC and/or PNC has an

interest without according to WTC and/or PNC, as applicable, a minimum of three (3) business

PHI 316,471,913v7 10-8-09

days written notice of a hearing regarding any requested use of Cash Collateral and the Debtor

shall not object to an expedited hearing on any motion filed by WTC and/or PNC requesting

relief from the automatic stay of section 362 of the Bankruptcy Code which motion may be heard

no earlier than the third business day following WTC's and/or PNC's filing of such a motion.

20.    A final hearing (the "Final Hearing") on the relief provided for herein shall be

held on November 2, 2009, at 9:30 a.m. in the courtroom of the Honorable Bruce I. Fox, United

States Bankruptcy Judge for the Eastern District of Pennsylvania, 900 Market Street, 2nd Floor,

Courtroom No. 2, Philadelphia, PA 19107.  Such date may be adjourned or continued by this

Court without further notice other than that given in open court.  At the Final Hearing, the

Debtor will seek, amongst other relief, approval of a waiver of rights under section 506(c) of the

Bankruptcy Code.  The Debtor shall serve notice of the Final Hearing and a copy of this Interim

Order by regular mail within two business days following the entry of this Interim Order upon:

(i) Kevin P. Callahan, Office of the United States Trustee; 833 Chestnut Street, Suite 500,

Philadelphia, PA 19107 (ii) the Debtor's twenty (20) largest unsecured creditors; (iii) counsel to

WTC; (iv) known holders of pre-petition liens against the Debtor's personal property; (v) the

Internal Revenue Service; and (vi) all other parties that have requested notice under Bankruptcy

Rule 2002.  Any party objecting to the entry of the Final Order approving the Motion shall file a

written objection stating the grounds for such objection, and serve a copy of the objection on or

before 4:00 p.m. (Eastern Time) on _____, 2009, upon the parties identified in this

paragraph, as well as counsel to the Committee, if any; the Office of the United States Trustee;

counsel for the Debtor, Albert A. Ciardi, III, Esquire, Ciardi, Ciardi & Astin, One Commerce

Square, 2005 Market Street, Suite 1930, Philadelphia, PA 19103; counsel for WTC, Diane E.

Vuocolo, Esquire and Kevin P. Ray, Esquire, Greenberg Traurig, LLP, 2700 Two Commerce

PHI 316,471,913v7 10-8-09

Square, 2001 Market Street, Philadelphia, PA 19103; and counsel for PNC, Donna M. Donaher,

Esquire, Tucker Arensberg, P.C., 1500 One PPG Place, Pittsburgh, PA 15222.


Dated: _____, 2009
        Philadelphia, Pennsylvania

                                    _____
                                    The Honorable Bruce I. Fox
                                    United States Bankruptcy Judge

PHI 316,471,913v7 10-8-09

# SCHEDULE "A" TO
# INTERIM ORDER PURSUANT TO 11 U.S.C. § 363 TO PERMIT USE OF CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION TO PARTIES WITH INTEREST IN CASH COLLATERAL

## "Budget"

*PHI 316,471,913v7 10-8-09*

**Interstate Equities**

FOR CONFIDENTIAL USE OF INTERSTATE EQUITIES PERSONNEL ONLY. ALL OTHERS WILL BE PROSECUTED

## Four Week Cash Flow Analysis
CONFIDENTIAL

| | Week 1 | | Week 2 | | Week 3 | | Week 4 | |
|---|---|---|---|---|---|---|---|---|
| Cost of Sales | 256,946.00 | | 256,946.00 | | 256,946.00 | | 256,946.00 | |

**Cost of Food**

| | $ | % | $ | % | $ | % | $ | % |
|---|---|---|---|---|---|---|---|---|
| Cost of Food | 68,000.00 | 26.46% | 68,000.00 | 26.46% | 68,000.00 | 26.46% | 68,000.00 | 26.46% |
| Cost of Paper | 7,600.00 | 2.96% | 7,600.00 | 2.96% | 7,600.00 | 2.96% | 7,600.00 | 2.96% |
| Cost of Waste | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% |
| Rebates & Incentives | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% |
| Employee Meals | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% |
| Cost of Goods Sold | 75,600.00 | 29.42% | 75,600.00 | 29.42% | 75,600.00 | 29.42% | 75,600.00 | 29.42% |

| | $ | % | $ | % | $ | % | $ | % |
|---|---|---|---|---|---|---|---|---|
| Cost of Goods Sold | 181,346.00 | 70.58% | 181,346.00 | 70.58% | 181,346.00 | 70.58% | 181,346.00 | 70.58% |

| | $ | % | $ | % | $ | % | $ | % |
|---|---|---|---|---|---|---|---|---|
| Hourly Wages | 44,500.00 | 17.32% | 44,500.00 | 17.32% | 44,500.00 | 17.32% | 44,500.00 | 17.32% |
| Management Salaries | 23,700.00 | 9.22% | 23,700.00 | 9.22% | 23,700.00 | 9.22% | 23,700.00 | 9.22% |
| Payroll Taxes | 8,200.00 | 3.19% | 8,200.00 | 3.19% | 8,200.00 | 3.19% | 8,200.00 | 3.19% |
| Management Meals | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% |
| Employee Benefits | 4,600.00 | 1.79% | 4,600.00 | 1.79% | 4,600.00 | 1.79% | 4,600.00 | 1.79% |
| Bonus/Vacation | 400.00 | 0.16% | 400.00 | 0.16% | 400.00 | 0.16% | 400.00 | 0.16% |
| Management/Crew Training Wages | 1,800.00 | 0.70% | 1,800.00 | 0.70% | 1,800.00 | 0.70% | 1,800.00 | 0.70% |
| Total Payroll | 83,200.00 | 32.38% | 83,200.00 | 32.38% | 83,200.00 | 32.38% | 83,200.00 | 32.38% |

**Occupancy Expenses**

| | $ | % | $ | % | $ | % | $ | % |
|---|---|---|---|---|---|---|---|---|
| Rent/Ground Lease | 18,450.00 | 7.18% | 18,450.00 | 7.18% | 18,450.00 | 7.18% | 18,450.00 | 7.18% |
| CAM Charges | 3,375.00 | 1.31% | 3,375.00 | 1.31% | 3,375.00 | 1.31% | 3,375.00 | 1.31% |
| Electric | 8,400.00 | 3.27% | 8,400.00 | 3.27% | 8,400.00 | 3.27% | 8,400.00 | 3.27% |
| Gas/Propane | 3,750.00 | 1.46% | 3,750.00 | 1.46% | 3,750.00 | 1.46% | 3,750.00 | 1.46% |
| Water/Sewer | 650.00 | 0.25% | 650.00 | 0.25% | 650.00 | 0.25% | 650.00 | 0.25% |
| Telephone | 600.00 | 0.23% | 600.00 | 0.23% | 600.00 | 0.23% | 600.00 | 0.23% |
| Hauling of Waste | 2,200.00 | 0.86% | 2,200.00 | 0.86% | 2,200.00 | 0.86% | 2,200.00 | 0.86% |
| Liability & Worker's Comp Insurance | 3,200.00 | 1.25% | 3,200.00 | 1.25% | 3,200.00 | 1.25% | 3,200.00 | 1.25% |
| Property Tax | 600.00 | 0.23% | 600.00 | 0.23% | 600.00 | 0.23% | 600.00 | 0.23% |
| Safety & Security | 375.00 | 0.15% | 375.00 | 0.15% | 375.00 | 0.15% | 375.00 | 0.15% |
| Total Occupancy | 41,600.00 | 16.19% | 41,600.00 | 16.19% | 41,600.00 | 16.19% | 41,600.00 | 16.19% |

**Maintenance Expenses**

| | $ | % | $ | % | $ | % | $ | % |
|---|---|---|---|---|---|---|---|---|
| Equipment Repairs | 2,000.00 | 0.78% | 2,000.00 | 0.78% | 2,000.00 | 0.78% | 2,000.00 | 0.78% |
| Operating Supplies | 2,500.00 | 0.97% | 2,500.00 | 0.97% | 2,500.00 | 0.97% | 2,500.00 | 0.97% |
| Building & Grounds | 4,400.00 | 1.71% | 4,400.00 | 1.71% | 4,400.00 | 1.71% | 4,400.00 | 1.71% |
| HVAC Repairs | 500.00 | 0.19% | 500.00 | 0.19% | 500.00 | 0.19% | 500.00 | 0.19% |
| Uniforms/Laundry | 200.00 | 0.08% | 200.00 | 0.08% | 200.00 | 0.08% | 200.00 | 0.08% |
| POS Services & Repairs | 100.00 | 0.04% | 100.00 | 0.04% | 100.00 | 0.04% | 100.00 | 0.04% |
| Total Maintenance | 9,700.00 | 3.78% | 9,700.00 | 3.78% | 9,700.00 | 3.78% | 9,700.00 | 3.78% |

| | Week 1 | | Week 2 | | Week 3 | | Week 4 | |
|---|---|---|---|---|---|---|---|---|
| Operating Costs | $ | % | $ | % | $ | % | January-00 | |
| | | | | | | | $ | % |
| Royalties | 9,635.48 | 3.75% | 9,635.48 | 3.75% | 9,635.48 | 3.75% | 9,635.48 | 3.75% |
| National Advertising | 10,277.84 | 4.00% | 10,277.84 | 4.00% | 10,277.84 | 4.00% | 10,277.84 | 4.00% |
| Regional ADI Advertising | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% |
| Local Marketing/Advertising | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% |
| Food Giveaways | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% |
| Music | 125.00 | 0.05% | 125.00 | 0.05% | 125.00 | 0.05% | 125.00 | 0.05% |
| Seminars Costs & Other Fees | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% |
| Bank Charges & Fees | 400.00 | 0.16% | 400.00 | 0.16% | 400.00 | 0.16% | 400.00 | 0.16% |
| Store Office Supplies | 400.00 | 0.16% | 400.00 | 0.16% | 400.00 | 0.16% | 400.00 | 0.16% |
| Cash Over/Shorts | 175.00 | 0.07% | 175.00 | 0.07% | 175.00 | 0.07% | 175.00 | 0.07% |
| Miscellaneous Expense | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% |
| Taxes/Licenses | 800.00 | 0.31% | 800.00 | 0.31% | 800.00 | 0.31% | 800.00 | 0.31% |
| Store Travel | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% |
| Equipment Lease (Prin & Int) | 650.00 | 0.25% | 650.00 | 0.25% | 650.00 | 0.25% | 650.00 | 0.25% |
| Other | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% |
| Total Operating Costs | 22,463.32 | 8.74% | 22,463.32 | 8.74% | 22,463.32 | 8.74% | 22,463.32 | 8.74% |
| | | | | | | | | |
| Total Operating Costs | 232,563.32 | 90.51% | 232,563.32 | 90.51% | 232,563.32 | 90.51% | 232,563.32 | 90.51% |
| | | | | | | | | |
| Store Operating Profit | 24,382.69 | 9.49% | 24,382.69 | 9.49% | 24,382.69 | 9.49% | 24,382.69 | 9.49% |

Interstate Equities

FOR CONFIDENTIAL USE OF INTERSTATE EQUITIES PERSONNEL ONLY. ALL OTHERS WILL BE PROSECUTED

## Four Week Cash Flow Analysis
### CONFIDENTIAL

| Administration Cost | $ | % | $ | % | $ | % | $ | % |
|---|---|---|---|---|---|---|---|---|
| Office Expenses | 1,525.00 | 0.59% | 1,525.00 | 0.59% | 1,525.00 | 0.59% | 1,525.00 | 0.59% |
| Meals | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% |
| Travel & Lodging, Tips | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% |
| Administration Salaries | 5,750.00 | 2.24% | 5,750.00 | 2.24% | 5,750.00 | 2.24% | 5,750.00 | 2.24% |
| Vehicle Expenses | 3,400.00 | 1.32% | 3,400.00 | 1.32% | 3,400.00 | 1.32% | 3,400.00 | 1.32% |
| Admin. Payroll Taxes | 650.00 | 0.25% | 650.00 | 0.25% | 650.00 | 0.25% | 650.00 | 0.25% |
| Administration Insurance | 300.00 | 0.12% | 300.00 | 0.12% | 300.00 | 0.12% | 300.00 | 0.12% |
| Administration Office Telephone | 300.00 | 0.12% | 300.00 | 0.12% | 300.00 | 0.12% | 300.00 | 0.12% |
| Administrative Cell Phones | 250.00 | 0.10% | 250.00 | 0.10% | 250.00 | 0.10% | 250.00 | 0.10% |
| Admin. Benefits | 2,000.00 | 0.78% | 2,000.00 | 0.78% | 2,000.00 | 0.78% | 2,000.00 | 0.78% |
| Assn. Fees & Subscriptions | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% |
| Mgmt. Training | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% |
| Consulting Fees | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% |
| Mgmt. Fee | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% |
| Other Charges | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% |
| Administration Expenses | 14,175.00 | 5.52% | 14,175.00 | 5.52% | 14,175.00 | 5.52% | 14,175.00 | 5.52% |
| | | | | | | | | |
| Net Cash Flow | 10,207.69 | 3.97% | 10,207.69 | 3.97% | 10,207.69 | 3.97% | 10,207.69 | 3.97% |
| | | | | | | | | |
| Interest Expense | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% |

| Other Costs | $ | % | $ | % | $ | % | $ | % |
|---|---|---|---|---|---|---|---|---|
| BKC Note (Prin. & Int) | 2,825.00 | 1.10% | 2,825.00 | 1.10% | 2,825.00 | 1.10% | 2,825.00 | 1.10% |
| PNC Note (Prin. & Int) | 813.00 | 0.32% | 813.00 | 0.32% | 813.00 | 0.32% | 813.00 | 0.32% |
| Mariani Settlement | 500.00 | 0.19% | 500.00 | 0.19% | 500.00 | 0.19% | 500.00 | 0.19% |
| Old Pa. Sales Tax Agreement | 700.00 | 0.27% | 700.00 | 0.27% | 700.00 | 0.27% | 700.00 | 0.27% |
| IRS Tax Agreement | 325.00 | 0.13% | 325.00 | 0.13% | 325.00 | 0.13% | 325.00 | 0.13% |
| Credit Card Fees | 1,625.00 | 0.63% | 1,625.00 | 0.63% | 1,625.00 | 0.63% | 1,625.00 | 0.63% |
| Outside Payroll | 240.00 | 0.09% | 240.00 | 0.09% | 240.00 | 0.09% | 240.00 | 0.09% |
| Professional Services | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% |
| Penalties And Fees | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% |
| Other Costs Total | 7,028.00 | 2.74% | 7,028.00 | 2.74% | 7,028.00 | 2.74% | 7,028.00 | 2.74% |

| Other Expenses | $ | % | $ | % | $ | % | $ | % |
|---|---|---|---|---|---|---|---|---|
| Principal Payment (WTC Loans) | 3,100.00 | 1.21% | 3,100.00 | 1.21% | 3,100.00 | 1.21% | 3,100.00 | 1.21% |
| | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% |
| | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% |
| | | | | | | | | |
| Net Cash Generated | 79.68 | 0.0% | 79.68 | 0.0% | 79.68 | 0.0% | 79.68 | 0.0% |